**PAPETTI SAMUELS WEISS MCKIRGAN LLP**
16430 North Scottsdale Road
Suite 290
Scottsdale, AZ 85254

**Bruce Samuels** (State Bar No. 015996)
Direct Dial: 480.800.3530
Email: bsamuels@PSWMlaw.com

**Lawrence A. Kasten** (State Bar No. 020204)
Direct Dial: 480.908.1855
Email: lkasten@PSWMlaw.com

**Heather Robles** (State Bar No. 036790)
Direct Dial: 480.800.3522
Email: hrobles@PSWMlaw.com

**KANJI & KATZEN P.L.L.C.**
Post Office Box 3971
Ann Arbor, MI 48106
734.769.5400

**Riyaz A. Kanji** (*pro hac vice*)
Email: rkanji@kanjikatzen.com

**David A. Giampetroni** (*pro hac vice*)
Email: dgiampetroni@kanjikatzen.com

**Joshua C. Handelsman** (*pro hac vice*)
Email: jhandelsman@kanjikatzen.com

**Anjana R. Joshi** (*pro hac vice*)
Email: ajoshi@kanjikatzen.com

**KANJI & KATZEN P.L.L.C.**
12 North Cheyenne Avenue
Suite 220
Tulsa, OK 74103
734.769.5400

**Philip H. Tinker** (*pro hac vice*)
Email: ptinker@kanjikatzen.com

**COOLEY LLP**
1299 Pennsylvania Avenue NW
Washington, DC 20004
202.842.7800

**Elizabeth B. Prelogar** (*pro hac vice*)
Email: eprelogar@cooley.com

**Joshua Revesz** (*pro hac vice*)
Email: jrevesz@cooley.com

**TOHONO O'ODHAM NATION**
Post Office Box 830
Sells, AZ 85634

**Howard M. Shanker** (State Bar No. 015547)
Attorney General
Email: howard.shanker@tonation-nsn.gov

**Logan Takao Cooper** (State Bar No. 035745)*
Assistant Attorney General
Email: logan.cooper@tonation-nsn.gov

*Admission Pending

*Attorneys for Tohono O'odham Nation*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Tohono O'odham Nation,<br>Plaintiff,<br>v.<br>SLS Federal Services, LLC,<br>Defendant. | Case No. 4:26-cv-00574-SHR<br><br>**RESPONSE OF THE TOHONO O'ODHAM NATION IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 1

LEGAL STANDARD ..... 3

ARGUMENT ..... 4

I. This Tort Action Could Not Have Been Brought in the District of Columbia. ..... 4

II. All Other Factors Weigh Against Transfer. ..... 7

A. The Locus of SLS' Contract with CBP is Irrelevant to the Nation's Tort Claims Against SLS. ..... 8

B. This Court Is Equally Familiar with the Applicable Law and Possesses Greater Local Interest in This Action. ..... 9

C. The Nation's Choice of Its Forum of Residence Warrants Great Deference. ..... 10

D. The Tortious Conduct Giving Rise to this Action Is Occurring Solely in Arizona. ..... 12

E. The Locations of Witnesses and Evidence Do Not Favor Transfer. ..... 13

CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Cases**

*Alkanani v. Aegis Defense Services, LLC*, 976 F.Supp.2d 13 (D.D.C. 2014)....5, 6

*Barroca v. United States*, 2019 WL 5722383 (N.D. Cal. Nov. 5, 2019)....8

*California v. U.S. Bureau of Land Management,* 2017 WL 8294171 (N.D. Cal. Sept. 7, 2017)....10

*Center for Biological Diversity v. Ross*, 310 F.Supp.3d 119 (D.D.C. 2018)....9

*Cummings v. Western Trial Lawyers Association*, 133 F.Supp.2d 1144 (D. Ariz. 2001)....8, 13

*DBW Partners, LLC v. Market Securities, LLC*, 2024 WL 3741414 (D.D.C. Aug. 10, 2024)....5

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986)....4, 8, 13, 14

*Estate of Abtan v. Blackwater Lodge and Training Center*, 611 F.Supp.2d 1 (D.D.C. 2009)....5, 13

*Fiore v. Walden*, 688 F.3d 558 (9th Cir. 2012)....8

*Geo Group, Inc. v. Menocal*, 607 U.S. 438 (2026)....11, 12

*Gilburd v. Rocket Mortgage LLC*, 2023 WL 8480062 (D. Ariz. Dec. 7, 2023)....14

*Gonzalez v. Internacional de Elevadores, S.A.*, 891 A.2d 227 (D.C. Cir. 2006)....6

*Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC*, 2013 WL 442296 (D. Ariz. Feb. 5, 2013)....4

*Hoffman v. Blaski*,
363 U.S. 335 (1960) ..................................................4, 7

*In re Bozic*,
888 F.3d 1048 (9th Cir. 2018) ..................................................7

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) ..................................................passim

*Lawyers for Fair Reciprocal Admission v. United States*,
2022 WL 16835617 (D. Ariz. Nov. 9, 2022) ..................................................4

*Medbox Inc. v. Kaplan*,
2013 WL 6094577 (D. Ariz. Nov. 20, 2013) ..................................................8

*Myers v. Bennett Law Offices*,
238 F.3d 1068 (9th Cir. 2001) ..................................................8

*New York v. Pruitt*,
2018 WL 2411595 (S.D.N.Y. May 29, 2018) ..................................................10

*OptoLum, Inc. v. Cree, Inc.*,
244 F.Supp.3d 1005 (D. Ariz. 2017) ..................................................10

*Piasecki v. Sanofi Pasteur Inc.*,
2017 WL 4224915 (N.D. Cal. Sept. 22, 2017) ..................................................14

*Pierucci v. Homes.com Inc.*,
2020 WL 5439534 (D. Ariz. Sept. 10, 2020) ..................................................10

*Piper Aircraft Co. v. Reyno*,
454 U.S. (1981) ..................................................10

*Scott v. Carr*,
CASE NO. C20-236RSM, 2020 WL 3639637 (W.D. Wash. July 6, 2020) ..................................................10

*Sloan v. Pfizer, Inc.*,
2008 WL 4167083 (N.D. Cal. Sept. 8, 2008) ..................................................13

*Tohono O'odham Nation v. Mullin*,
No. 26-5306 (D.C. Cir. Aug. 27, 2026) ..................................................2

*Tohono O'odham Nation v. Mullin*,
No. 26-cv-2127 (D.D.C. June 16, 2026) ..................................................2

*United States v. Ferrara*,
54 F.3d 825 (D.C. Cir. 1995)....................5

*Vanguard Specialized Funds v. VEREIT Inc.*,
No. CV-15-02157-PHX-ROS, 2016 WL 5858735 (D. Ariz. Oct. 3, 2016)....................4

*Vasan v. Checkmate.com, Inc.*,
2025 WL 4227214 (C.D. Cal. June 24, 2025)....................8, 12

*Vogel v. Exocel Bio Inc.*,
2026 WL 788013 (D. Ariz. Mar. 20, 2026)....................3, 4, 6, 10

*Williams v. Bowman*,
157 F.Supp.2d 1103 (N.D. Cal. 2001)....................13

**Statutes**

28 U.S.C. § 1391....................4

28 U.S.C. § 1404(a)....................1, 3, 4, 7

D.C. Code § 13–423(a)....................5

**Other Authorities**

15 Wright & Miller's Federal Practice & Procedure Jurisdiction (4th ed.
Apr. 2026 Update)....................4, 13

## INTRODUCTION

The Tohono O'odham Nation ("Nation") sued Defendant SLS Federal Services, LLC ("SLS"), alleging that SLS is trespassing across the Nation's Reservation lands to construct a border wall across those lands over the Nation's staunch objections. Because the Nation's Reservation is located entirely within this judicial District, SLS's request to transfer this action to the United States District Court for the District of Columbia under 28 U.S.C. § 1404(a) is without merit.

The D.C. District Court would have lacked personal jurisdiction over SLS in a case challenging its tortious conduct occurring and causing harm in Arizona. This fact alone is fatal to SLS's motion. Yet SLS fails to mention personal jurisdiction even once in its motion. And even assuming, arguendo, that the clear lack of personal jurisdiction in the D.C. District Court were other than dispositive, and this Court had discretion to weigh equitable considerations for and against transfer, SLS falls far short of its burden to make the requisite "strong showing" on those considerations. Nor is it relevant that SLS contracted with the United States Department of Homeland Security (DHS), Customs and Border Protection (CBP), for construction of the border wall. The Nation brings no contract claims here under that contract or any other. Its claims are limited to torts taking place entirely within the Nation's Arizona Reservation. SLS's motion should accordingly be denied.

## FACTUAL BACKGROUND

On May 15, 2026, CBP notified the Nation that it would be soliciting bids from contractors to construct a border wall and associated infrastructure across the Nation's sixty-two-mile southern border. Dkt. 8-1, Decl. of Verlon Jose ("Jose Decl.") ¶ 7. The

Nation responded by filing suit against DHS and CBP officials in their official capacities (collectively "federal officials") in the D.C. District Court on June 16, 2026, *Tohono O'odham Nation v. Mullin*, No. 26-cv-2127 (D.D.C. June 16, 2026), seeking declaratory relief that the federal officials lacked authority to authorize such construction and an injunction against the same. The Court denied the Nation's motion for a preliminary injunction on August 14, 2026, finding in part that the federal officials' sovereign immunity likely barred suit against them. Memorandum Opinion, *Tohono O'odham Nation v. Mullin*, No. 26-cv-2127 (D.D.C. Aug. 14, 2026). The Nation has appealed that denial, and appellate proceedings are pending. *See Tohono O'odham Nation v. Mullin*, No. 26-5306 (D.C. Cir. Aug. 27, 2026).

On June 26, 2026, ten days after the Nation filed its action against the federal officials, SLS, a Texas company, entered into a contract with CBP to construct the border wall on the Nation's Reservation. Jose Decl. ¶ 7 & Attach. B. On August 7, 2026, the Nation's Chairman sent a letter to SLS to inform it of the Nation's trespass laws and that SLS did not have the Nation's consent to enter its Reservation. *Id.* ¶ 9 & Attach. D. Between August 10 and August 12, 2026, after SLS had received the Nation's letter, the Tohono O'odham Police Department discovered eleven contractors, including SLS and its subcontractors, traversing the Nation's Reservation to conduct border wall construction-related activities along the Reservation border. *Id.* All contractors were again informed of the Nation's trespass laws and instructed to leave the Reservation. *Id.*

Following these encounters, on August 25, 2026, contractors again entered the Nation's Reservation without its consent, this time escorted by federal agents. *Id.* ¶ 10.

Most recently, on October 21, 2026, a total of six SLS subcontractors were found operating on the Nation's Reservation by Nation staff, tagging saguaro cacti along the Nation's southern border for removal to clear the way for border wall construction. Dkt. 8-6, Decl. of Marcus Ramon ("Ramon Decl.") ¶¶ 2–3; Dkt. 8-8, Decl. of Kathryn (Katie) Beard ("Beard Decl.") ¶ 4. The Nation did not receive advance notice of these contractors' intention to enter the Reservation, Ramon Decl. ¶ 6, and has not consented to their presence on the Reservation, Jose Decl. ¶ 9 & Attach. D.

In response to SLS's repeated trespasses, the Nation filed this action, seeking an injunction preventing SLS from continuing to trespass on the Nation's Reservation. The Nation filed this action on October 28, 2026, one week after the Nation's October 21 discovery of six contractors trespassing on its Reservation in furtherance of SLS's border wall construction efforts. Dkt. 1, Complaint. The Nation brings this action against SLS directly for federal common law trespass occurring on the Nation's Reservation in Arizona. *Id.* ¶¶ 41–45.

## LEGAL STANDARD

SLS brings its motion under 28 U.S.C. § 1404(a), which provides that

> [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). SLS "has the burden of showing that the action should be transferred," *Vogel v. Exocel Bio Inc.*, 2026 WL 788013, at *7 (D. Ariz. Mar. 20, 2026) (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000)), and "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of

forum," *id.* (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)); *see also* 15 Wright & Miller's Federal Practice & Procedure Jurisdiction § 3848 (4th ed. Apr. 2026 Update) ("Wright & Miller") ("[A] motion to transfer under Section 1404(a) should not be granted lightly.").

**ARGUMENT**

**I. This Tort Action Could Not Have Been Brought in the District of Columbia.**

Section 1404(a) permits a court to transfer an action only to a court "where [the action] might have been brought," 28 U.S.C. § 1404(a). "A district where the action 'might have been brought' is one having subject matter jurisdiction over the controversy, *where the defendants are subject to personal jurisdiction*, and where venue is proper." *Helferich Pat. Licensing, LLC v. Suns Legacy Partners, LLC*, 2013 WL 442296, at *1 (D. Ariz. Feb. 5, 2013) (emphasis added) (citing *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960)); *see also Laws. for Fair Reciprocal Admission v. United States*, 2022 WL 16835617, at *1 (D. Ariz. Nov. 9, 2022) (denying transfer where the transferee "court would lack personal jurisdiction over" the defendants). This Court "need not find definitely that the action could not have been brought elsewhere; transfer is inappropriate where even a real issue exists as to whether the plaintiff could have brought the case in the transferee forum" because of personal jurisdiction. *Vanguard Specialized Funds v. VEREIT Inc.*, 2016 WL 5858735, at *8 (D. Ariz. Oct. 3, 2016) (citation omitted).

While SLS acknowledges that whether the action could have been brought in the transferee court is "the threshold inquiry for a motion to transfer," Mot. at 6, it addresses only venue under 28 U.S.C. § 1391, making no mention whatsoever of the dispositive

requirement of personal jurisdiction, *see id.* The reason is clear: the D.C. District Court would have no personal jurisdiction over SLS in this action.

Personal jurisdiction in the D.C. District Court "must be determined by reference to District of Columbia law." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995); *see also DBW Partners, LLC v. Mkt. Sec., LLC*, 2024 WL 3741414, at *10 (D.D.C. Aug. 10, 2024) (District of Columbia law controls the personal jurisdiction analysis "even when, as here, subject matter jurisdiction is predicated upon a federal question"). In tort actions, District law allows for personal jurisdiction "over a nonresident defendant *only* when the plaintiff's claim involves *tortious injury that occurs in the District of Columbia—not injury that occurs elsewhere*," *Alkanani v. Aegis Def. Servs., LLC*, 976 F.Supp.2d 13, 27 (D.D.C. 2014) (K.B. Jackson, J.) (emphasis added) (applying D.C. Code § 13–423(a)(3), (4)). Thus, the only possible hook for personal jurisdiction is the long-arm statute's conferral of jurisdiction for claims "arising from [a] person's … transacting any business in the District of Columbia," D.C. Code § 13-423(a)(1).

Federal courts have repeatedly held, however, that "an injury sounding in tort does not 'arise from' a contract for services for the purpose of specific jurisdiction," *Alkanani*, 976 F. Supp. 2d at 27. Were it otherwise, "any tort claim in any way related to actions by a federal contractor could be brought in the District of Columbia on the theory that 'but for' the federal contract, the alleged tort would not have occurred." *Est. of Abtan v. Blackwater Lodge and Training Ctr.*, 611 F.Supp.2d 1, 9 (D.D.C. 2009) (citation omitted).

This principle is routinely applied to deny personal jurisdiction in the District of Columbia over federal contractors performing a contract outside of the District. In *Gonzalez v. Internacional de Elevadores, S.A.*, 891 A.2d 227, 230–31, 241 (D.C. Cir. 2006), for instance, the District of Columbia Court of Appeals rejected an argument that a contract to repair elevators at the United States embassy in Mexico, entered between a Mexican contractor and the embassy (as a component of the Department of State), vested District of Columbia courts with personal jurisdiction over the contractor for tort claims arising from an elevator accident at the embassy in Mexico. The Court there held that "the mere existence of a contract between a foreign corporation and a local resident is not enough to establish [the] minimum contacts" necessary for personal jurisdiction, in part because the contractor could not "have anticipated being haled into court in the District of Columbia as a result of its entering into a contract with the Embassy for work to be done entirely in Mexico." *Id*. at 236; *see also Alkanani*, 976 F.Supp.2d at 27 (finding that a contract executed in the District of Columbia did not vest District courts with personal jurisdiction over torts committed elsewhere where, as here, the plaintiff "was neither a party nor a beneficiary of the contract" and "brought a tort claim, not an action for breach of contract" (citation and emphasis omitted)).

The D.C. District Court would accordingly lack personal jurisdiction over SLS for the Nation's tort claims against it under the well-settled law of the District, and transfer of this action is accordingly foreclosed by the plain terms of § 1404(a). SLS, who bears the burden to demonstrate that the requirements of § 1404 are met, *Vogel*, 2026 WL 788013, at *7, has not even attempted to carry it with respect to personal

jurisdiction. Nor can SLS cure this dispositive bar to its Motion by waiving any objections they could have asserted to personal jurisdiction if they had been sued there. As the Supreme Court has held, under § 1404(a), "it is immaterial that the defendant subsequently makes himself subject, by … waiver of … personal jurisdiction defenses …, to the jurisdiction of some other forum" because § 1404(a)'s phrase "where it might have been brought" cannot be interpreted to mean "where it may now be rebrought, with defendants' consent." *Hoffman*, 363 U.S. at 342–44 (citation modified)). Thus, the § 1404(a) threshold jurisdictional analysis is undertaken "independently of the wishes of defendant[.]" *Id*. at 344 (citation omitted); *accord In re Bozic*, 888 F.3d 1048, 1053 (9th Cir. 2018) ("This category cannot be expanded by Defendants, even if they favor transfer to a district where the action could not have been brought." (citing *Hoffman*, 363 U.S. at 344)).

## II. All Other Factors Weigh Against Transfer.

Under § 1404(a), if an action could have been brought in an alternative forum, the court must decide whether transfer is proper under a non-exclusive set of case-specific factors, which include

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498–99. Because the Nation's claims against SLS could not have been brought in the D.C. District Court, this court need not address these discretionary transfer factors. These factors nevertheless fail to support SLS's Motion.

### A. The Locus of SLS's Contract with CBP Is Irrelevant to the Nation's Tort Claims Against SLS.

SLS argues that transfer is proper because its contract with CBP was solicited and issued by CBP from Washington, D.C. and, it contends, that contract is "at the core of the Nation's suit" and is "the contract governing this dispute[.]" Mot. 7. That is simply incorrect. The Nation's action is one for trespass and does not in any way turn on an alleged breach of, or even interpretation of, that contract. While "the location where the relevant agreements were negotiated and executed," *Jones*, 211 F.3d at 498, is often weighed by courts considering the propriety of transfer, this factor "is *inapplicable* here, as the instant action sounds in tort, rather than contract," *Barroca v. United States*, 2019 WL 5722383, at *2 (N.D. Cal. Nov. 5, 2019) (emphasis added). "'In a tort action, the locus of the injury is a relevant factor' in determining whether" venue is proper in a chosen forum. *Vasan v. Checkmate.com, Inc.*, 2025 WL 4227214, at *5 (C.D. Cal. June 24, 2025) (quoting *Fiore v. Walden*, 688 F.3d 558, 587 (9th Cir. 2012), *rev'd on other grounds*, 571 U.S. 277 (2014)); *see also Myers v. Bennett Law Offs.*, 238 F.3d 1068, 1072 (9th Cir. 2001) (same); *Medbox Inc. v. Kaplan*, 2013 WL 6094577, at *3 (D. Ariz. Nov. 20, 2013) (same). The injuries stemming from SLS's trespasses on the Nation's lands will be felt in this District, where its Reservation lies.

But even assuming (counterfactually) that SLS's contract was somehow relevant to the Nation's tort claim, this Court would still be the more appropriate forum. Actions for injuries relating to contracts are properly brought in "the place of intended performance," which is "likely to have a close nexus to the underlying events." *Decker Coal Co.*, 805 F.2d at 842; *see also Cummings v. W. Trial Laws. Ass'n*, 133 F.Supp.2d

1144, 1150 (D. Ariz. 2001) (finding proper venue over a contract action in the District of Arizona where contract required party "to perform a majority of her tasks in Arizona" and "a substantial portion of the events giving rise to" contract-related claims "occurred in Arizona"). Thus, even under SLS's preferred (but erroneous) framing of this suit, that its contractual obligations will be performed in this District weighs in favor of this Court's continued jurisdiction.

**B. This Court Is Equally Familiar with the Applicable Law and Possesses Greater Local Interest in This Action.**

SLS acknowledges that this Court is equally familiar with the laws that govern this action. Mot. 8. It nevertheless asserts that the question of which court "is most familiar with the governing law," *Jones*, 211 F.3d at 498, weighs in favor of transfer because the D.C. court is "more familiar with the specific factual and procedural background" of the Nation's separate trespass claim against the federal defendants. Mot. 8. But "[t]he relevant inquiry is not whether a certain court is familiar with the factual and legal history of a case, but whether it is more familiar with the governing laws." *Ctr. for Biological Diversity v. Ross*, 310 F.Supp.3d 119, 126 (D.D.C. 2018) (quotation marks omitted) (emphasis in original).

Even were the facts and procedural background relevant, SLS's arguments again overlook the distinction between the Nation's trespass claims against SLS here and its separate action challenging the United States's authority to authorize border wall construction. While the D.C. District Court may be more familiar with the facts and procedural background of the latter, the Nation's claims against SLS arose after the Nation's federal officials' suit was filed and center solely on SLS's trespass actions,

which are located entirely within this District. Accordingly, this Court holds a considerably higher local interest in the Nation's claims against SLS, and "[t]he venue with the greater local interest is the venue favored in the transfer analysis," *Pierucci v. Homes.com Inc.*, 2020 WL 5439534, at *6 (D. Ariz. Sept. 10, 2020).

### C. The Nation's Choice of Its Forum of Residence Warrants Great Deference.

When a court considers a motion to transfer, "[a] plaintiff's choice of forum is usually given great deference." *Vogel*, 2026 WL 788013, at *8; *see Piper Aircraft Co. v. Reyno*, 454 U.S. 252, 241 (1981) ("[A] plaintiff's choice of forum should rarely be disturbed."). This choice is accorded even greater deference where, as here, "the forum chosen is the plaintiffs domicile," *OptoLum, Inc. v. Cree, Inc.*, 244 F.Supp.3d 1005, 1009 (D. Ariz. 2017); *see also Scott v. Carr*, 2020 WL 3639637, at *3 (W.D. Wash. July 6, 2020) ("This factor is generally given significant weight when the plaintiff resides in the chosen forum." (citation omitted)).

Moreover, the Nation is not an ordinary private plaintiff, but a sovereign seeking to enforce its right to territorial autonomy. Courts have recognized that the deference owed to a plaintiff's choice of its home forum may carry particular force "when the plaintiff is a sovereign state." *California v. U.S. Bureau of Land Mgmt.*, 2017 WL 8294171, at *2 (N.D. Cal. Sept. 7, 2017); *see also New York v. Pruitt*, 2018 WL 2411595, at *6 (S.D.N.Y. May 29, 2018). That concern has particular force here, where SLS asks the Nation to leave the jurisdiction encompassing its Reservation in order to litigate in another forum a claim to stop trespasses occurring on the Nation's own lands.

SLS argues that the Nation's right to choose its forum of residence, which is also the forum in which SLS's tortious conduct has taken and will continue to take place, is not entitled to deference because the Nation allegedly brought this action "to escape an unfavorable ruling in a different district." Mot. 7–8. The Nation takes significant exception to the suggestion that it is engaged in forum shopping. As SLS acknowledges, the Nation's action against federal officials is currently on appeal, Mot. 3–4, and the Nation has ample reason to believe it will prevail in that pending action.

And as SLS acknowledges, "the D.C. District Court ruled that the Nation is unlikely to succeed on the merits 'because the federal government's sovereign immunity bars its claim.'" *Id.* at 9; *see id*. (claiming that the instant suit is "a clear attempt to circumvent the sovereign immunity obstacle"). The Nation has no conceivable need to forum shop to escape any unfavorable rulings regarding federal officials' sovereign immunity in order to bring suit against SLS. Sovereign immunity "is confined to the sovereign entity itself," and SLS "cannot obtain immunity from suit by reason of a contract it made with the Government," *Geo Group, Inc. v. Menocal*, 607 U.S. 438, 449–50 (2026) (citation modified).

Nor does SLS's invocation of "derivative sovereign immunity" in its Opposition to Plaintiff's Motion for Preliminary Injunction, Dkt. 15 at 18-24, implicate the federal sovereign immunity analysis. The Court in *Geo Group* explained that "derivative sovereign immunity … describes a defense, not an immunity," *Geo Group, Inc.*, 607 U.S. at 448-449, noting that any contrary holding would be "in conflict with the general rule that sovereign immunity is not transferrable to agents, including contractors, of a

government." *Id.* at 449. Any sovereign immunity rulings issued by the D.C. District Court in the Nation's separate lawsuit, which are pending on appeal, simply have no bearing on the Nation's claims against SLS.

The Nation's suit against SLS, moreover, implicates distinct claims and legal principles from its separate suit against the federal officials, the latter of which involves doctrines grounded in the unique legal relationship between federally recognized tribes and the federal government and was filed before the government had even issued its contract to SLS. The instant suit seeks to prevent SLS, not federal officials, from trespassing on the Nation's Reservation and implicates trespasses that commenced after the Nation filed its suit in the D.C. District Court, including trespasses discovered by the Nation just one week before this action was filed, Ramon Decl. ¶ 2. That the Nation elected to bring those separate claims against federal agencies in the D.C. District Court in no way undermines the great deference owed to its decision to bring its trespass claims against SLS in the Nation's home forum, where those trespasses are occurring.

### D. The Tortious Conduct Giving Rise to this Action Is Occurring Solely in Arizona.

SLS's past and planned future trespasses on the Nation's Reservation necessarily take place within the District of Arizona where the Reservation is located. The related factors of "the respective parties' contacts with the forum" and "the contacts relating to the plaintiff's cause of action in the chosen forum," *Jones*, 211 F.3d at 498, accordingly weigh strongly against transfer. *See Vasan* 2025 WL 4227214, at *5 ("In a tort action, the locus of the injury is a relevant factor in determining whether" venue is proper in a chosen forum (quotation marks omitted)).

SLS seeks to elide the obvious connection between the location of its trespass activities and the local district court's jurisdiction over same by once again pointing to its contract with CBP, which it states was "generated, solicited, and issued by CBP from its headquarters in D.C.," Mot. at 9. But as noted, a "contractual relationship" between a contractor and the federal government is not "sufficient to render the District of Columbia a suitable venue for any litigation tangentially connected to that relationship," *Est. of Abtan*, 611 F.Supp.2d at 9, and the place of a contract's intended performance outweighs its place of issuance or the residencies of its respective parties in the choice of forum analysis. *Supra* II.A. (citing *Decker Coal Co.*, 805 F.2d at 842, and *Cummings*, 133 F.Supp.2d at 1150).

**E. The Locations of Witnesses and Evidence Do Not Favor Transfer.**

SLS concludes by arguing that the locations of witnesses and evidence in D.C. favor transfer. Neither does. SLS gestures vaguely to "government officials who solicited and issued" its contract and their location in D.C. to support transfer under this factor. Mot. 10. But more is required of SLS to carry its burden. *See* Wright & Miller § 3851 ("The party seeking the transfer must identify, typically by affidavit, the key witnesses to be called, state their residence, and provide at least a general summary of what their testimony will cover."); *Sloan v. Pfizer, Inc.*, 2008 WL 4167083 (N.D. Cal. Sept. 8, 2008) ("To demonstrate inconvenience of witnesses, the moving party must identify relevant witnesses, state their location and describe their testimony and its relevance." (quoting *Williams v. Bowman*, 157 F.Supp.2d 1103, 1108 (N.D. Cal. 2001)). SLS has simply failed to identify any federal witnesses, documents, or potential

testimony on which it might rely to support its claims or defenses in this matter. Further, "in the digital age, given the ease with which documents can be transported, access to evidence is a less significant factor in the venue analysis." *Piasecki v. Sanofi Pasteur Inc.*, 2017 WL 4224915, at *3 (N.D. Cal. Sept. 22, 2017) (citations omitted).

Moreover, the Nation's leadership and its declarants are all located outside of the District of Columbia, with the overwhelming majority located in Arizona, *see* Jose Decl.; Dkt. 8-2, Decl. of Beverly Matthews; Dkt. 8-4, Decl. of Samuel Fayuant; Ramon Decl.; Dkt. 8-7, Decl. of Laiken Jordahl; Beard Decl., and the alleged trespasses committed by SLS have been and will be undertaken wholly within Arizona. Thus, even if SLS may call some as-yet unidentified witnesses for whom the D.C. District Court would be a more convenient forum, "a transfer would merely shift the inconvenience from" SLS's witnesses to those of the Nation, *Gilburd v. Rocket Mortg. LLC*, 2023 WL 8480062, at *6 (D. Ariz. Dec. 7, 2023) (citing *Decker Coal Co.*, 805 F.2d at 843 ("The transfer would merely shift rather than eliminate the inconvenience.")).

**CONCLUSION**

SLS cannot establish that this action could have been brought in the D.C. District Court and has failed to meet its substantial burden to show that discretionary factors support transfer of this case. Its motion accordingly should be denied.

DATED this 25th day of November, 2026.

KANJI & KATZEN P.L.L.C.

*/s/ Riyaz A. Kanji*
Riyaz Kanji (*pro hac vice*)
David A. Giampetroni (*pro hac vice*)
Joshua C. Handelsman (*pro hac vice*)
Anjana R. Joshi (*pro hac vice*)
Philip H. Tinker (*pro hac vice*)

PAPETTI SAMUELS WEISS MCKIRGAN LLP
Bruce Samuels
Lawrence A. Kasten
Heather Robles

COOLEY LLP
Elizabeth R. Prelogar (*pro hac vice*)
Joshua Revesz (*pro hac vice*)

TOHONO O'ODHAM NATION
Howard M. Shanker
Attorney General
Logan Takao Cooper (admission pending)
Assistant Attorney General

*Attorneys for Tohono O'odham Nation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of November, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the CM/ECF registrants appearing in this matter.

*/s/ Riyaz A. Kanji*
Riyaz A. Kanji